# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| CALIFORNIA BOARD SPORTS, INC., | CASE NO. 06CV2365 IEG (AJB) |
|---|---|
| Plaintiff, | **ORDER AFFIRMING IN PART, VACATING IN PART MAGISTRATE JUDGE'S ORDER ON DEFENDANT'S MOTIONS FOR PROTECTIVE ORDER AND DISQUALIFICATION OF COUNSEL** |
| vs. | |
| VANS, INC., | |
| Defendant. | (Doc. No. 26) |

Presently before the Court are California Board Sports, Inc.'s ("plaintiff") objections (Doc. No. 26) to Magistrate Judge Battaglia's Order (Doc. No. 23) granting Vans, Inc.'s ("defendant") motions for protective order and disqualification of counsel and denying plaintiff's request for sanctions. Specifically, plaintiff asks the Court to (1) vacate the magistrate judge's order, (2) deny both of defendant's motions, and (3) grant plaintiff's request for sanctions. For the reasons stated below, the Court affirms the magistrate judge's order granting defendant's motion for a protective order and denying plaintiff's request for sanctions. The Court vacates the magistrate judge's order disqualifying counsel and denies defendant's motion.

## BACKGROUND

**A.    Factual Background**

The magistrate judge's order contains a thorough recitation of the facts, which this Court

1  incorporates by reference. Briefly summarized, plaintiff markets shoes, accessories, and apparel to
2  the skating and surfing community. (Compl. ¶ 1.) The underlying action seeks declaratory relief
3  that plaintiff's use of a checkerboard pattern/design on its products, including the Serve Black
4  White Checkered Shoe ("Checkered Shoe"), does not infringe or dilute defendant's trademarks.
5  (Id. ¶ 5 & at 14.)

6       In 1996, defendant hired Jay Wilson as vice president–marketing. (Gosselin Decla. ¶ 5.)
7  Three years later, Wilson became defendant's vice president–global marketing until leaving
8  defendant in 2003. (Id.) Wilson's primary duties involved promoting and increasing public
9  recognition of defendant's products and trademarks. (Wilson Decla. ¶ 4.) As a marketing
10 employee, Wilson reported any third party uses of black-and-white checkerboard shoe designs to
11 Craig Gosselin, defendant's general counsel. (Id. ¶¶ 5-6.) Wilson also participated on defendant's
12 executive team with Gosselin. (Gosselin Decla. ¶ 5.) Gosselin coordinated the protection of
13 defendant's trademarks and advised defendant on legal action. (Id. ¶¶ 4, 9.)

14      In August 2005, Wilson joined plaintiff as executive vice president. (Wilson Decla. ¶ 2.)
15 Prior to Wilson's hiring, plaintiff developed the Checkered Shoe and included it in the lineup of
16 shoes for sale to the public. (Id. ¶ 9.) Wilson was not involved in the creation or development of
17 the Checkered Shoe. (Id.)

18 **B.     Procedural Background**

19      On October 2, 2006, plaintiff filed the underlying complaint for declaratory relief. (Doc.
20 No. 1.) On January 8, 2007, the magistrate judge conducted an early neutral evaluation (ENE)
21 conference. (Doc. No. 7.) Defendant subsequently moved for a protective order screening Wilson
22 from further involvement in the litigation on the grounds that Wilson had access to and received
23 privileged information and work product during his employment with defendant. (Doc. No. 12.)
24 Defendant further moved for the disqualification of plaintiff's counsel, John Kim and Donald
25 Tremblay, on the grounds that Wilson "presumably conveyed highly confidential information to
26 [counsel]." (Id.) In its opposition, plaintiff requested bad-faith sanctions against defendant, and
27 the law firms and individual attorneys representing defendant. (Doc. No. 17, at 13.)
28      In a seventeen-page order, the magistrate judge granted both of defendant's motions and

1  denied plaintiff's request for sanctions.  (Doc. No. 23.)  Plaintiff timely served and filed objections
2  to the order (Doc. No. 26).  Defendant replied to the objections.  (Doc. No. 29.)

## LEGAL STANDARD

Where a party timely objects to a magistrate judge's written decision of a nondispositive pretrial matter, the district judge "shall consider such objections and shall modify or set aside any portion of the magistrate judge's order to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); cf. 28 U.S.C. § 636(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004). Under the "clearly erroneous" standard, the district court may not reconsider the magistrate judge's findings of fact unless the court has "a definite and firm conviction that a mistake has been committed." Burdick v. C.I.R., 979 F.2d 1369, 1370 (9th Cir. 1992); Whirlpoorl Corp. v. CIT Group/Bus. Credit, Inc., 293 F. Supp. 2d 1144, 1147 (D. Haw. 2003). The magistrate judge's conclusions of law, however, "are freely reviewable de novo to determine whether they are contrary to law." Wolpin v. Philip Morris, Inc., 189 F.R.D. 418, 422 (C.D. Cal. 1999) (citing United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir. 1984), overruled on other grounds by Estate of Merchant v. C.I.R., 947 F.2d 1390 (9th Cir. 1991)).

## DISCUSSION

**A.     Protective Order**

    1.     Legal Standard

A party seeking a protective order must show "good cause" for the order. Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estate of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). Because the district court may "make any order which justice requires," the rule gives the trial court "'broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" Contratto v. Ethicon, Inc., 227 F.R.D. 304, 308 (N.D. Cal. 2005) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)); cf. Fed. R. Civ. P. 26(c). In crafting a protective order concerning the disclosure of confidential information (e.g., trade secrets), a court "weigh[s] the risk of the disclosure of the [information] to unauthorized parties with the risk that a protective order will impede prosecution

1  or defense of the claims." In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991);

2  Trevino v. ACB Am., Inc., 232 F.R.D. 612, 617 (N.D. Cal. 2006).

3        2.      Magistrate Judge's Order

4        The magistrate judge found that Wilson possessed privileged attorney-client

5  communications. The magistrate judge credited defendant's assertions that, as a member of the

6  executive team, Wilson participated in discussions of the relative merits of defendant's trademarks

7  and strategies to enforce them. (Doc. No. 23, at 5.) Although Wilson denied receiving

8  confidential information concerning defendant's trademarks, his declaration carried less weight

9  because a nonlawyer could not "identify and safeguard attorney-client privileged information or

10 other confidential information." (Id. at 7:9-10.) While Christian Brown, an independent sales

11 contractor, corroborated Wilson's declaration that Gosselin did not discuss confidential

12 information in sales meetings, the Brown declaration also received minimal weight because

13 defendant would not have allowed independent contractors into the executive team meetings

14 where Gosselin shared confidential information with Wilson. (Id. at 7.) The magistrate judge also

15 relied on documents that defendant submitted in camera, which provided a specific example of

16 attorney-client communication that Wilson received concerning defendant's trademark at issue in

17 this litigation. (Id. at 5.)

18       Based on the finding that Wilson indeed possessed confidential information relevant to this

19 litigation, the magistrate judge rejected plaintiff's argument that defendant's motion was unripe

20 because discovery had not yet commenced. (Id. at 6.)

21       Balancing the hardships, the Court found that the potential for improper disclosure of

22 defendant's confidential information outweighed the harm that plaintiff would suffer by appointing

23 a different corporate representative to take Wilson's place in assisting counsel. (Id. at 7-8.)

24 Plaintiff's argument that Wilson was the most knowledgeable executive on the Checkered Shoe

25 trademark actually cut in favor of granting the protective order because Wilson gained his

26 knowledge of defendant's trademark from confidential information disclosed by Gosselin. (Id. at

27 8.) Even after screening Wilson from the case, plaintiff could still depose him as a fact witness

28 and have him testify on nonprivileged matters. (Id.)

1       In granting defendant's motion for a protective order, the magistrate ordered plaintiff "to
2 ensure that Mr. Wilson is formally screened from discussing this matter with litigation counsel as
3 well as other [plaintiff] employees." (Id. at 16:21-23.)

4       3.     Analysis

5       Plaintiff presents two objections to the magistrate judge's protective order. Plaintiff first
6 asserts that the magistrate judge was clearly erroneous in finding that Wilson received privileged
7 information material to this litigation. Plaintiff especially objects to the magistrate judge's
8 reliance on the documents submitted in camera without allowing plaintiff to review the non-
9 confidential portions and respond to that evidence. (See Memo. ISO Objections, at 6.)

10       This Court has likewise reviewed the documents that the magistrate judge reviewed in
11 camera and agrees with the magistrate judge's characterization of this evidence as "a specific
12 example of the character of the attorney-client communications Mr. Wilson received" respecting
13 defendant's trademark at issue in this case. (See Doc. No. 23, at 5:12-13.) Even without the
14 documents submitted in camera, however, the magistrate judge's finding that Wilson received
15 confidential information material to this litigation was not clearly erroneous. The magistrate judge
16 balanced competing declarations that offered two versions of the facts. Gosselin claimed that he
17 shared legal analysis with the executive team concerning the relative strengths of defendant's
18 various trademarks. (Supp. Gosselin Decla. ¶ 4.) Gosselin provided Wilson with specific advice
19 on the promotion and protection of defendant's checkerboard design trademark. (Gosselin Decla.
20 ¶ 7.) On the other hand, Wilson claimed that he never received Gosselin's legal opinions
21 regarding defendant's trademarks or any other confidential business information. (Wilson Decla.
22 ¶¶ 6, 12.) Brown confirmed Gosselin did not talk about legal strategy to protect the checkerboard
23 design trademark in sales meetings. (Brown Decla. ¶ 4.)

24       "Where there are two permissible views of the evidence, the factfinder's choice between
25 them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985);
26 Duckett v. Godinez, 109 F.3d 533, 535 (9th Cir. 1997). Applied to these facts, this Court must
27 defer to the magistrate judge's finding that Gosselin's declarations were more persuasive because,
28 inter alia, Wilson could not fully recognize confidential information as a nonlawyer and Brown did

1 not attend executive team meetings where Gosselin typically disclosed confidential information.

2 Plaintiff's second objection is that the magistrate judge's protective order is contrary to law because no authority supports screening off a party's employee from the entire case. (Memo. ISO Objections, at 10-11.) The protective order is arguably too broad because, without screening Wilson from the entire case, the Court could require him not to use any of defendant's confidential information during this lawsuit.

The Court refuses to second-guess the magistrate judge's balancing of hardships in ordering that plaintiff screen off Wilson from the case. As plaintiff points out, other courts have addressed the risks of improper use of confidential information by requiring that the information be sealed. See Cooke v. Superior Court of Los Angeles County, 83 Cal. App. 3d 582, 592 (Cal. Ct. App. 1978). A protective order sealing documents would be futile here, however, where the confidential information consists of legal opinions and theories that Gosselin orally communicated to Wilson. The magistrate judge concluded that defendant's interest in the confidentiality of its information was sufficiently strong to require plaintiff to select a different litigation contact within its organization. The magistrate judge's protective order stands because this Court "may not overturn a protective order simply because [it] might have weighed differently the various interests and equities[.]" Rivera, 364 F.3d at 1063.

**B.     Disqualification of Counsel**

   1.     Legal Standard

State law governs questions of attorney disqualification. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000). A California court derives its authority to disqualify counsel from its inherent authority "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Cal. Civ. Proc. Code § 128(a)(5); Roush v. Seagate Tech., LLC, 150 Cal. App. 4th 210, 58 Cal. App. 3d 275, 280 (Cal. Ct. App. 2007). Motions for disqualification implicate a client's right to an attorney of its choosing; the attorney's interest in representing the client; the financial burden of replacing disqualified counsel; the possibility of tactical abuse in motions for disqualification; and, most importantly, the preservation of public trust in the

administration of justice and integrity of the bar. People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1144 (Cal. 1999); Dino v. Pelayo, 145 Cal. App. 4th 347, 351 (Cal. Ct. App. 2006).

An attorney's "mere exposure to confidential information of the opposing party does not require disqualification." Neal v. Health Net, Inc., 100 Cal. App. 4th 831, 841 (Cal. Ct. App. 2002); Maruman Integrated Circuits, Inc. v. Consortium Corp., 166 Cal. App. 3d 443, 448 (Cal. Ct. App. 1985). Specifically, ex parte contacts with an opposing party's former employee are insufficient grounds for attorney disqualification. Cont'l Ins. Co. v. Superior Court, 32 Cal. App. 4th 94, 119 (Cal. Ct. App. 1995); see In re Complex Asbestos Litig., 232 Cal. App. 3d 572, 588 (Cal. Ct. App. 1991) (attorney has no duty to maintain opposing party's confidences, absent a prior attorney-client relationship). Where an opposing party knows its employees possess privileged information, that party should seek a protective order. Cont'l Ins. Co., 32 Cal. App. 4th at 119 (discussing Nalian Truck Lines, Inc. v. Nakamo Warehouse & Transp. Corp., 6 Cal. App. 4th 1256, 1264 (Cal. Ct. App. 1992)).

Where present counsel hires a nonlawyer employee or expert consultant who previously was employed/retained by opposing counsel, and where such employee or consultant actually possesses confidential information from the prior employment that is material to the pending litigation, California courts employ a rebuttable presumption that the employee or consultant has disclosed the confidential information to present counsel. Shandralina G. v. Homonchuk, 147 Cal. App. 4th 395, 408-410 (Cal. Ct. App. 2007); Toyota Motor Sales, U.S.A., Inc. v. Superior Court, 46 Cal. App. 4th 778, 782 (Cal. Ct. App. 1996). The rebuttable presumption applied, for example, when a paralegal accessed his defense firm's electronic files to review the cases of the plaintiff's firm which subsequently employed him. Complex Asbestos, 232 Cal. App. 3d at 597-98. The presumption did not apply, however, when plaintiff's counsel contacted two of the corporate defendant's directors, who reviewed privileged case status reports involving the litigation. La Jolla Cove Motel & Hotel Apartments, Inc. v. Superior Court, 121 Cal. App. 4th 773, 791 (Cal. Ct. App. 2004). Likewise, the presumption did not apply where an in-house legal secretary accessed the litigation file of a former coworker and later retained the former coworker's attorney in the

1  secretary's own lawsuit against the employer. Neal, 100 Cal. App. 4th at 848.

2  If the presumption does not apply, "'the normal burdens of proof, wherein the party
3  moving for relief must establish its right to it, is appropriate.'" Shandralina G., 147 Cal. App. 4th
4  at 410 (quoting Collins v. State, 121 Cal. App. 4th 1112, 1129 (Cal. Ct. App. 2004)). In other
5  words, the burden of proving that the confidential information was conveyed to counsel lies with
6  the party moving for disqualification. Neal, 100 Cal. App. 4th at 848. The "appearance of
7  impropriety" is insufficient grounds for disqualification. Id. at 848-89; Complex Asbestos, 232
8  Cal. App. 3d at 590 n.7; Gregori v. Bank of Am., 207 Cal. App. 3d 291, 307-08 (Cal. Ct. App.
9  1989). But see Williams v. Trans World Airlines, 588 F. Supp. 1037, 1040 (W.D. Mo. 1984)
10 (finding "appearance of impropriety" and disqualifying counsel under assumption that former
11 personnel manager conveyed confidential information about another employee's case to counsel
12 representing both the former employee and the personnel manager).[1]

13     2.     Magistrate Judge's Order

14 Based on the finding that Wilson obtained confidential information concerning the
15 trademarks at issue in this case, the magistrate judge employed a rebuttable presumption that
16 Wilson disclosed that information to plaintiff's counsel. (Doc. No. 23, at 11-12.) To rebut the
17 presumption, counsel needed to show that Wilson would not have any involvement in the litigation
18 or communication with the litigating attorneys. To the contrary, the facts established that Wilson
19 was "integral in spearheading the litigation[.]" (Id. at 14:25.)

20 The magistrate judge rejected plaintiff's arguments that defendant could not properly move
21 for disqualification because defendant had no former or current attorney-client relationship with
22 plaintiff's counsel. The magistrate judge found that defendant had a "sufficient personal stake" in
23 the motion to satisfy the constitutional standing requirements. (Id., at 12:24-25.) The magistrate
24 judge further found that California law did not absolutely require a prior attorney-client
25 relationship where, as here, the source of the confidential information (i.e., Wilson) was under a

26

---

27 [1] Although defendant relied on Williams before the magistrate judge (see Trans., at 21:16–22:9), California courts have held that Williams does not accurately state California's law on
28 attorney disqualification. Neal, 100 Cal. App. 4th at 848-49; Complex Asbestos, 232 Cal. App. 3d at 590 n.7.

fiduciary duty (to defendant, his former employer)[2] not to disclose the confidential information. (Id., at 14:16-18.)

Finally, the magistrate judge rejected plaintiff's hypothetical argument that disqualification was inappropriate because all confidential information counsel received during this litigation came from the client. That argument was "unpersuasive under the specific facts presented" because it would erode the attorney-client privilege whenever corporate executives switched jobs and brought confidential information from their former employer to their new position. (Id., at 15:9-19.)

The magistrate judge never affirmatively found that Wilson disclosed confidential information to plaintiff's counsel, and instead concluded defendant "met its burden of demonstrating that Mr. Wilson <u>may</u> have disclosed and <u>may</u> continue to disclose [defendant's] attorney-client privileged and confidential information to [plaintiff]." (Id. at 7:2-3 (emphasis added.)

3.  Analysis

Even assuming defendant had standing to bring this motion,[3] the magistrate judge's disqualification of plaintiff's counsel was contrary to law. The magistrate judge specifically

---

[2] Wilson signed an employment agreement which prohibited him from revealing trade secret information, even after his employment was terminated. (Gosselin Decla. ¶ 11 & Exhibit A.)

[3] The bulk of the magistrate judge's discussion of attorney disqualification focused on whether a party other than a current or former client may move to disqualify counsel and, if so, whether defendant had standing to move for disqualification of plaintiff's counsel in this case. The Ninth Circuit has not expressly stated who may move to disqualify counsel. See Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998). Older California cases, including those most heavily relied upon by plaintiff, insisted on an attorney-client relationship as a prerequisite for a motion to disqualify counsel. Maruman, 166 Cal. App. 3d at 447; Cooke, 83 Cal. App. 3d at 592.

More recently, the California courts have held, "[s]tanding arises from the breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." DCH Health Servs. Corp. v. Waite, 95 Cal. App. 4th 829, 832 (Cal. Ct. App. 2002); accord Dino v. Pelayo, 145 Cal. App. 4th 347, 353 (Cal. Ct. App. 2006) (requiring "some sort of confidential or fiduciary relationship"). The Waite court suggested that any breach of confidentiality was sufficient. E.g., a foundation could move to disqualify opposing counsel who was engaged to, and later married, one of the foundation's directors because the director owed a duty of confidentiality to the foundation. 95 Cal. App. 4th at 832. The statement was dicta because the actual movants were co-plaintiffs to whom the director owed no duty of confidentiality. Id. Here, because Wilson similarly owed a duty of confidentiality that extended beyond the conclusion of his employment with defendant, the Court finds the magistrate judge's conclusion that defendant had standing to move for disqualification of plaintiff's counsel was not contrary to law.

1  applied the rule, "where a former consultant or employee is shown to have possessed confidential
2  information material to the pending litigation, a rebuttable presumption arises that the employee
3  has disclosed such confidential information to present counsel." (Doc. No. 23, at 10:9-11.)
4  Understanding the rebuttal presumption in context, however, the term "employee" does not mean
5  an employee of a party. Instead, "employee" means an employee of counsel, e.g., a paralegal who
6  learns confidential information about the case while working for one party's counsel and then
7  takes a job with opposing counsel. Shandralina G., 147 Cal. App. 4th at 408 (discussing Complex
8  Asbestos, 232 Cal. App. 3d at 592-96). Similarly, "consultant" does not mean the person within
9  the corporation who confers with counsel regarding litigation strategy. Instead, "consultant"
10 means an expert who obtains confidential information about the case while working for one
11 party's counsel before being retained subsequently by opposing counsel. Shadow Traffic Network
12 v. Superior Court, 24 Cal. App. 4th 1067, 1084-85 (Cal. Ct. App. 1994); County of Los Angeles v.
13 Superior Court, 222 Cal. App. 3d 647, 657-58 (Cal. Ct. App. 1990). The limited scope of the
14 rebuttable presumption is demonstrated by the California courts' refusal to apply it where the party
15 moving for disqualification retained the expert as a consultant, even after the opposing counsel
16 designated the consultant as his own expert. Collins, 121 Cal. App. 4th at 1129.

17      Other cases involving the current and former employees of the party moving for
18 disqualification make clear that the magistrate judge's application of the rebuttable presumption to
19 these facts was contrary to law. In La Jolla Cove Motel, the defendant sought to disqualify
20 plaintiffs' counsel for contacting two of defendant's directors who received privileged status
21 reports concerning litigation between defendant and one plaintiff. 121 Cal. App. 4th at 778-79.
22 The California Court of Appeal refused to disqualify counsel because defendant could not show
23 that the directors actually communicated the confidential information that they possessed. Id. at
24 791. If the rebuttable presumption did not apply to a party's current directors in La Jolla Cove
25 Motel, then it does not apply to a party's former executive in this case. See In re EXDS, Inc., No.
26 C05-0787 PVT, 2005 WL 2043020, at *8 (N.D. Cal. Aug. 21, 2005).

27      Similarly, in Neal, the defendant sought to disqualify plaintiff's counsel because one of
28 counsel's other clients was the defendant's former personnel manager who, during her time as

1 manager, had reviewed plaintiff's litigation file. 100 Cal. App. 4th at 834-36. The Court of
2 Appeal likewise denied the motion for disqualification because, <u>inter alia</u>, defendant presented no
3 evidence that the personnel manager shared confidential information with plaintiff's counsel. <u>Id.</u>
4 at 848. The court refused to impose a presumption of disclosure. <u>Id.</u> Applied to these facts,
5 Wilson's acquisition of relevant confidential information during his employment with defendant
6 does not give rise to a rebuttable presumption that he actually disclosed that information after his
7 new employer retained plaintiff's counsel. <u>Cf.</u> <u>Bell v. 20th Century Ins. Co.</u>, 212 Cal. App. 3d
8 194, 198 (Cal. Ct. App. 1989) (refusing to disqualify attorney who represented former vice
9 president of human resources merely because client, during her employment, discussed legal
10 strategies in a case involving another employee represented by the attorney's partner).

11 Because the rebuttable presumption does not apply, defendant must show that Wilson
12 actually disclosed the confidential information he possessed to plaintiff's counsel. <u>Collins</u>, 121
13 Cal. App. 4th at 1129; <u>Neal</u>, 100 Cal. App. 4th at 848. Merely asserting a strong suspicion that
14 Wilson revealed confidential information to plaintiff's counsel, defendant failed to present any
15 actual, concrete evidence of disclosure. (<u>See</u> Memo. ISO Motion for Protective Order, at 10
16 (claiming "specific evidence of disclosure or lack thereof is not required to show a need for
17 disqualification").) In supplemental declarations submitted with its reply, defendant's counsel
18 claimed that it became concerned Wilson was disclosing confidential information after his
19 statements during the ENE Conference. (Supp. Pappas Decla. ¶ 2; Been Decla. ¶ 2.) As the
20 magistrate judge found, however, "statements made during an ENE [conference] are privileged
21 and confidential and cannot themselves be used as evidence to support [defendant's] motion."
22 (Doc. No. 23, at 3 n.1 (discussing Civ. L.R. 16.1(c)(1)(b)).)

23 Plaintiff, by contrast, submitted declarations from both Wilson and plaintiff's counsel that
24 Wilson never disclosed confidential information regarding defendant's trademark at issue in this
25 litigation. (Kim Decla. ¶ 5; Tremblay Decla. ¶ 4; Wilson Decla. ¶ 12.) Kim and Tremblay (as
26 attorneys) know the difference between confidential and nonconfidential information, even if
27 Wilson (their client) does not. Plaintiff's declarations, uncontroverted by any admissible evidence
28 from defendants, show that defendant has not carried its burden to show actual disclosure of

confidential information.

Even if the factual record supported a finding that Wilson disclosed confidential information to plaintiff's counsel (or if the Court assumed such disclosure), the magistrate judge's ruling remains contrary to law because, "[i]f the disclosure is made by the attorney's own client, disqualification is neither justified nor an effective remedy. A party cannot 'improperly' disclose information to its own counsel in the prosecution of its own lawsuit."[4] Complex Asbestos, 232 Cal. App. 3d at 591; accord Roush, 58 Cal. Rptr. 3d at 281. Having assumed that any confidential information disclosed to plaintiff's counsel came from the client (Doc. No. 23, at 15:7-9), the magistrate judge's ruling that plaintiff's counsel could nonetheless be disqualified was contrary to law. Although the magistrate judge's order cited a valid public policy–i.e., protecting the corporate attorney-client privilege in the context of job-switching executives–it did not acknowledge that an effective prohibition on certain discussions between attorney and client "would defeat the purpose of confidentiality, which is to promote full and open discussions between attorney and client." Neal, 100 Cal. App. 4th at 844. The paramount public policy in these cases is preserving open communication between attorneys and clients. Complex Asbestos, 232 Cal. App. 3d at 590.

Because California law prohibits disqualification of attorneys for a client's disclosure of confidential information, this Court must vacate the magistrate judge's order disqualifying plaintiff's counsel in this case. Although defendant cannot prevail on its motion to disqualify, defendant will receive a proper remedy to protect the confidential information that Wilson possesses, i.e., a protective order screening Wilson from this case. See Cont'l Ins. Co., 32 Cal. App. 4th at 119.

**C.   Sanctions**

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions

---

[4] Disqualification is an ineffective remedy because, as the Complex Asbestos court noted, the client would remain free to share confidential information with the next attorney, leaving the opponent in the same situation as before. 232 Cal. App. 3d at 591.

pursuant to this section "require a showing of 'bad faith, improper motive, or reckless disregard of the duty owed to the court.'" Quintana v. Baca, 232 F.R.D. 631, 632 (C.D. Cal. 2005) (quoting Edwards v. Gen. Motors Corp., 153 F.3d 242, 246 (5th Cir. 1998)). A frivolous or meritless filing is insufficient to establish bad faith. Ingle v. Circuit City, 408 F.3d 592, 596 (9th Cir. 2005).

The magistrate judge found defendant brought its meritorious motion in good faith. (Doc. No. 23, at 16; cf. Trans., at 29:7-9 {"I don't doubt the good faith of Vans in bringing the motion because they have concerns[.]") The magistrate judge emphasized that defendant brought its motions about a month after the ENE conference, which first alerted defendant that Wilson may possess confidential information. (Doc. No. 23, at 16.)

Though the magistrate judge's disqualification of plaintiff's counsel was contrary to law, the Court declines to impose sanctions against defendant and its counsel. The Court recognizes that California courts vigilantly guard against using disqualification motions to harass opposing counsel or intimidate the opponent into accepting lowball settlements. Dino, 145 Cal. App. 4th at 352. Such concerns are unwarranted here, however, where defendant filed its motion to disqualify as part of a multi-pronged strategy to prevent the disclosure of confidential information within Wilson's possession. Furthermore, defendant filed its motion shortly after the ENE conference and, thus, before settlement discussions began in earnest. Although defendant relied on the Williams opinion consistently rejected by California courts, defendant also made good-faith arguments for extending the rule of such leading California cases as Complex Asbestos and Shadow Traffic.[5] Even with its meritless argument for disqualification under current California law, defendant's motion does not rise to the level of "bad faith" required for sanctions under 28 U.S.C. § 1927. Ingle, 408 F.3d at 596.

**CONCLUSION**

Because the magistrate judge made no clearly erroneous factual findings and exercised his discretion to balance the equities, the Court **AFFIRMS** the magistrate judge's grant of defendant's motion for a protective order. As ordered by the magistrate judge, plaintiff **SHALL**

---

[5] Because defendants made nonfrivolous arguments for an extension of existing law, they are not subject to Rule 11 sanctions. See Fed. R. Civ. P. 11(b)(2).

1  **FORMALLY SCREEN** Jay Wilson from discussing this case with plaintiff's counsel and other
2  employees, and from accessing the case file.

3  Because defendant did not move for disqualification in bad faith, the Court **AFFIRMS** the
4  magistrate judge's denial of plaintiff's request for sanctions.

5  By imposing a rebuttable presumption that Wilson disclosed confidential information to
6  plaintiff's counsel, and by concluding that counsel could be disqualified for receiving confidential
7  information from the client, the magistrate judge's disqualification of plaintiff's counsel was
8  contrary to law.  The Court **VACATES** the magistrate judge's grant of defendant's motion to
9  disqualify counsel and **DENIES** defendant's motion to disqualify Messrs. Kim and Tremblay.
10 Plaintiff's current counsel **MAY CONTINUE** to represent plaintiff in this litigation.

11 **IT IS SO ORDERED**.

13 **DATED:  June 5, 2007**

**IRMA E. GONZALEZ, Chief Judge
United States District Court**